FARWELL FARMERS' WAREHOUSE ASS'N *vs.* MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY CO.

Argued June 13, 1893. Affirmed Sept. 8, 1893.

No. 8203.

**Equality of Railway Facilities for Dealing in and Shipping Grain.**

By Laws 1887, ch. 10, § 2, subd. b, a railway company is obliged to give equal or substantially similar facilities for the transportation of grain to all persons who in good faith erect or desire to erect warehouses at any of its stations; and if a demand therefor is unreasonably refused the state railway and warehouse commission may, after due investigation, proceed to enforce the performance of such duty.

**Terms and Conditions must be the Same for All.**

A railway company may impose reasonable terms and conditions upon persons who demand such facilities, but they must be the same for all.

Appeal by the Minneapolis, St. Paul and Sault Ste. Marie Railway Company, from the judgment of the District Court of Hennepin County, *William Lochren, J.*, entered January 25, 1893.

The Farwell Farmer's Warehouse Association on February 12, 1892, presented to the Railroad and Warehouse Commission of this state (Laws 1887, ch. 10, § 9) a complaint against the above named Railway Company that it was refused a spur track to its warehouse at Farwell. The Railway Company answered March 1, 1892, that the warehouse stood 350 feet from its nearest switch and sidetrack, that the Warehouse Company did not own the land where the warehouse stood and had no right to build thereon, that to construct a sidetrack to the warehouse would cost $1,000 and that the business it was likely to furnish would not justify the expense. On April 1, 1892, a hearing was had before the Commission and evidence given and the Commission decided that the Railway Company was guilty of unjust and illegal discrimination against the Association and had violated the Statute, and it ordered the Railway Company to construct the track within ninety days. The Company appealed to the District Court of Hennepin County, where it was submitted October 24, 1892, on the pleadings and the report of the Commission without other evidence. After argument the Court affirmed the decision of the Commission and judgment was entered accordingly. The Complaint was made under Laws 1887, ch. 10, § 2, subd. b.,

which is a substantial copy of the first clause of Section Three (3) of the Act of Congress of February 4, 1887, ch. 104 (24 U. S. Stat. p. 379).

*Alfred H. Bright* and *M. B. Koon,* for appellant.

Whatever may be the duty of carriers in the way of furnishing public facilities of any sort, it would seem clear that they cannot be compelled to go beyond this.   The sidetrack covered by the judgment is for the sole use and benefit of the respondent.   There is no pretense that it is in any sense a facility for the benefit and use of the public, like the sidetracks covered by the second proviso to the act of 1887, ch. 10, § 3, subd. c.   The Railway Company is thus required to give up to the private use of plaintiff so much of its right of way as may be required for this sidetrack, and besides this to forever dedicate to the use of the plaintiff an amount of money sufficient for the construction and maintenance of the sidetrack.   Certainly this is taking the property of the Company for a private use. But the property of the Company cannot in any manner or on any pretext be taken for a private use without the consent of the owner, nor can it be taken for a public use without making just compensation.   *State* v. *Chicago, M. & St. P. Ry. Co.,* 36 Minn. 402.

The Railway Company has furnished to the public at Farwell ample sidetrack facilities for the accommodation of every individual in the exercise of every right which he holds in common with the public.   What the plaintiff demands and what the court has ordered the defendant to furnish is, in effect, the right to an individual sidetrack which it would be preposterous to assume is the right of every person, because this in principle would require the Railway Company to furnish as many sidetracks as there might be individuals composing the public; if they saw fit to make the demand.

It may be suggested that the order complained of is really to subserve public convenience.   In view of this, we call attention to *State* v. *Noyes,* 47 Me. 189; *Nelson* v. *Vermont Central Ry. Co.,* 26 Vt. 717.

*H. W. Childs,* Attorney General, and *Horace Austin,* for respondent, cited *State* v. *District Court,* 42 Minn. 249; *State* v. *Missouri*

*P. Ry. Co.,* 29 Neb. 550; *Mayor &c.* v. *Norwich & W. R. Co.,* 109 Mass. 103.

VANDERBURGH, J.   The plaintiff, having erected a warehouse adjacent to the right of way of the defendant in the village of Farwell, Pope county, demanded of the defendant company that it construct a side track to the same on its right of way, to enable it to ship grain received and stored therein; and upon the refusal of its request complaint was made to the railroad and warehouse commission of the state.   An investigation was had thereon by the commission in pursuance of the statute, and its findings of fact and conclusions of law made and filed, granting the petition.   These findings and conclusions were adopted and affirmed by the District Court on appeal, and upon the same record the appeal from the judgment of that court is to be determined here.

The gist of the complaint is that the defendant has refused to grant to the plaintiff the same privileges or equal facilities for the shipment of grain which it has conceded to other warehousemen at the same station, and has unlawfully discriminated against the plaintiff in that respect.

The findings material to the consideration of the case are as follows:   "That on the 22d day of October, A. D. 1889, the said complainant duly organized under its articles of incorporation by the election of its officers, and commenced the business for which it was incorporated; and, being then prepared and ready for the transaction of its business, did, on the 26th of said month, make application in writing to the defendant for a site or location on which to erect a grain warehouse in which to transact its said business on defendant's right of way at said Farwell station, and alongside of defendant's track thereat.   That said defendant unconditionally refused said application, and wholly neglected to comply with the same.   That upon such refusal upon the part of the defendant the complainant purchased and obtained a site and location for a grain house at said Farwell station, and adjacent to defendant's right of way, as near as practicable to the station building and side track of the defendant, and did then and there construct a grain house, and furnish the same with necessary equipment for storage,

handling, and shipment of wheat and other grain.   That this grain house was completed and ready for the transaction of such business in the autumn of 1889, and has been occupied by the complainant in the buying, handling, and shipping of wheat and other grain ever since its completion.

That said grain house is fifty-five (55) feet from the main track of defendant's line of railway, and on land owned by the complainant.

That on the 4th day of February and on the 25th day of September, 1890, the complainant demanded of the defendant, in writing, that defendant should construct or furnish a side track or spur track at said Farwell station, which should connect by rail the said grain house with the defendant's main line or side track.   That defendant could then have so constructed and can now so construct such side or spur track as that no part of the same would be off its right of way.

That the defendant has at all times refused and neglected to comply with such demand.

That the defendant corporation had not only allowed other persons or associations to erect and maintain elevators and grain houses on its said right of way, and in connection with its side tracks, at said Farwell station, previous to the making of the complainant's said application, but had also theretofore permitted other persons and associations to construct and erect grain warehouses and elevators at the station on said road next to the east and at a station thereon next to the west of said Farwell station, and not more than six miles therefrom in either direction.   That such warehouses and elevators were built and erected at the said stations pursuant to such permission and consent of the defendant before the making of the complainant's said application, and have, since the erection of the complainant's said house, been operated and conducted in competition therewith; and the same is also true of the two grain houses erected on the right of way at said Farwell station, as shown in the evidence."

"We find from the evidence that by reason of the defendant's refusal to permit the erection and maintenance of the grain house of the complainant upon the right of way of the company and in connection with the side track at said Farwell station the complainant has been compelled to transfer the grain by it offered to the de-

fendant company for transportation from its grain house to its cars by wagon, and that the cost of said transfer from the date of the erection of said warehouse to the present time has been the sum of six hundred ten and 75-100 dollars."

Railroad corporations are quasi public corporations, and enjoy privileges and franchises granted by the state in consideration of the general benefits which the public may be expected to derive from the operations of the roads.

They must, therefore, subject to certain necessary and proper limitations, which the law will recognize, be operated so as to reasonably accommodate the business and subserve the best interests of the public.

One of the most important of these interests in an agricultural community is the marketing and transportation of grain; and the price may in any particular case be affected to a greater or less extent by the facilities for transportation afforded, and the opportunity for competition by purchasers.

It is undoubtedly a subject proper for legislative cognizance. It is an essential condition to the right of eminent domain by a railroad corporation that all the people should have the right to use the road on equal terms; and it is the policy of the law not to permit such corporations to grant special privileges to any persons which are denied to others under like conditions. This is declared by the act of 1887 regulating common carriers and prescribing the duties of the railroad commissioners. Laws 1887, ch. 10, § 2, subd. b.

In our judgment, the following legal conclusion, based upon the facts found in the case, was warranted thereby, and authorized the judgment appealed from: "That the defendant corporation, in refusing the complainant a site for its grain house on defendant's right of way, when the same was demanded by it, while admitting other persons and associations engaged in the prosecution of the same class of business to erect and maintain grain warehouses or elevators on said right of way, as well as in affording them free side-track accommodations in connection with such grain houses and elevators, while such privileges were by the defendant denied to the complainant, was and is guilty of unjust and illegal discrimination toward and against said association."

There is no doubt of the good faith of the plaintiff, and the amount

of business transacted by it under unfavorable circumstances shows that there is a public demand for the maintenance of its warehouse. It is entitled to be placed on an equal footing with other dealers and warehousemen at the same station. The discrimination against it appears to be unreasonable, and it was entitled to the relief adjudged in its favor.

It is not claimed by the respondent's counsel that the plaintiff had an absolute right to occupy the defendant's right of way, or to demand a site for a warehouse thereon. The railway company was not obliged to grant such concessions on its right of way. All that is contended for in that regard, and all that was necessarily decided in the case, is that, if it granted these privileges to others, it cannot refuse the same or substantially similar ones to the plaintiff; and it cannot complain, after having refused a site on its right of way similar to that granted to others, that the plaintiff should accept a site adjacent thereto, and demand a side track for its accommodation which the court finds to be a reasonable and proper concession under the circumstances, in order to afford substantially similar facilities to the plaintiff for handling grain to those granted to others at the same station. Undoubtedly the railway company may impose reasonable conditions and terms upon persons who demand trackage for warehouses for the transportation for grain, but they must be the same for all; and the refusal of the company to furnish such trackage at any particular station and within its right of way, so as to allow competition in the handling and transportation of grain, is a proper subject of investigation by the railway and warehouse commission under the act referred to.

It is not deemed necessary to consider other questions raised by counsel in the case, especially in view of recent legislation.

Judgment affirmed.

(Opinion published 56 N. W. Rep. 248.)